UNITED STATES DISTRICT COURT
EASTERN DISTRICT OF LOUISIANA

---------------------------------------------------------
| RONNEKA SMITH, | CIVIL ACTION |
| | |
| Plaintiff, | CASE NO. _____ |
| | |
| v. | JUDGE _____ |
| | |
| OCHSNER MEDICAL CENTER – WESTBANK, L.L.C.; and OCHSNER HEALTH SYSTEM, | |
| | |
| Defendants. | |
---------------------------------------------------------

**COMPLAINT**

**BIZER & DEREUS**

Andrew D. Bizer (LA # 30396)
andrew@bizerlaw.com
Garret S. DeReus (LA # 35105)
gdereus@bizerlaw.com
Marc P. Florman (LA # 35128)
mflorman@bizerlaw.com
3319 St. Claude Ave.
New Orleans, LA 70117
T: 504-619-9999; F: 504-948-9996

1. Plaintiff Ronneka Smith is a Deaf individual who communicates primarily in American Sign Language ("ASL"), which is her most effective means of communication. Defendants own and operate a hospital and medical center located at 2500 Belle Chasse Highway, Terrytown, Louisiana 70056. Defendants have discriminated against Ms. Smith by failing and/or refusing to provide auxiliary aids and services necessary to ensure effective communication with her.

2. Lip-reading, which is the ability to understand the speech of another by watching the speaker's lips, is an extremely speculative means of communication and is no substitute for direct doctor-patient communication through a qualified sign language interpreter.

3. Video Remote Interpreting (VRI) is a videotelecommunication service that uses devices such as web cameras or videophones to provide sign language or spoken language interpreting services through a remote or offsite interpreter.

4. Based on Ms. Smith's allegations herein, it is evident that defendants failed to implement policies and to train their employees regarding the civil rights and communication needs of Deaf individuals. Ms. Smith brings this action to compel defendants to cease their unlawful discriminatory practices and implement policies and procedures that will ensure effective communication, full and equal enjoyment, and a meaningful opportunity for Deaf individuals to participate in and benefit from defendant's health care services.

5. Ms. Smith also seeks for this Court to Order defendants to implement policies and procedures that will ensure effective communication, full and equal enjoyment, and a meaningful opportunity to participate in and benefit from defendants' health care services.  Ms. Smith seeks declaratory, equitable, and injunctive relief, and attorneys' fees and litigation costs, to redress defendants' unlawful discrimination on the basis of disability in violation of Title III of the

Americans With Disability Act, 42 U.S.C. § 12181 *et seq.* ("ADA"); Section 504 of the Rehabilitation Act of 1973, 29 U.S.C. § 794 ("Rehab Act"); and Section 1557 of the Patient Protection and Affordable Care Act, 42 U.S.C. § 18116 ("Section 1557"). Plaintiff also seeks monetary damages (including nominal damages) pursuant to the Rehab Act and Section 1557.[1]

## THE PARTIES

6.      Plaintiff RONNEKA SMITH (hereinafter "Ms. Smith") brings this action and is an individual residing in the greater New Orleans metropolitan area. Ms. Smith is a profoundly Deaf individual who primarily communicates in American Sign Language, and she is an individual with a disability within the meaning of federal antidiscrimination laws.

7.      Defendant OCHSNER MEDICAL CENTER – WESTBANK, L.L.C. (hereafter "Ochsner Westbank") is an individual doing business in Jefferson Parish. Upon information and belief, Ochsner Westbank owns, operates, and/or provides the health care services offered at Ochsner Medical Center Westbank, 2500 Belle Chasse Highway, Terrytown, Louisiana 70056. Upon information and belief, defendant is a recipient of federal financial assistance, including Medicare and/or Medicaid reimbursements, and is subject to the requirements of Title III of the ADA, Section 1557 of the ACA, and Section 504 of the Rehab Act.

8.      Defendant OCHSNER HEALTH SYSTEM (hereafter "Ochsner Health") is a Louisiana non-profit corporation doing business in Jefferson Parish. Upon information and belief, Ochsner Health owns, operates, and/or provides the health care services offered at Ochsner Medical Center Westbank, 2500 Belle Chasse Highway, Terrytown, Louisiana 70056. Upon information and belief, defendant is a recipient of federal financial assistance, including Medicare and/or Medicaid reimbursements, and is subject to the requirements of Title III of the ADA,

---

[1] Plaintiff recognizes that money-damages are not available under Title III of the ADA.

Section 1557 of the ACA, and Section 504 of the Rehab Act.

## JURISDICTION & VENUE

9. This Court has jurisdiction over the subject matter of this action pursuant to 28 U.S.C. §§ 1331 and 1343 for Plaintiff's claims arising under federal law.

10. Venue is proper in this district pursuant to 28 U.S.C. § 1391(b) because defendants reside within the jurisdiction of this District, and the events that give rise to the claims occurred in this District.

11. This Court has supplemental jurisdiction over plaintiff's state law claims because they arise from the same transaction or occurrence as plaintiff's claims sounding in federal civil rights law.

## STATEMENT OF FACTS

12. Ms. Smith is profoundly deaf and communicates primarily in American Sign Language (ASL).

13. Ms. Smith does not have detailed knowledge of specialized medical terminology, and requires auxiliary aids and services to communicate effectively in a medical setting.

14. On or about October 5, 2006, the United States of America entered into a settlement agreement with Meadowcrest Hospital. *See* Exhibit "A." Under the terms of this agreement, Meadowcrest Hospital agreed that it "shall provide appropriate auxiliary aids and services, including sign language interpreters, where such aids and services are necessary to ensure effective communication with persons who are deaf and shall provide persons who are deaf with the full and equal enjoyment of the services, privileges, facilities, advantages and accommodations of Meadowcrest Hospital as required by this Agreement, the ADA and Section 504."

15. While said agreement did not contain an admission or concession of liability or

wrongdoing, it does evidence that as of October 5, 2006, Meadowcrest had explicit knowledge of its obligations under the requirements of the ADA and other civil rights law.

16. Under the "definitions" section of the agreement, hospital was defined to mean "Meadowcrest Hospital, 2500 Belle Chasse Highway, Gretna, Louisiana 70056".

17. Upon information and belief, Ochsner Health and/or Ochsner Westbank are the successors in interest to Meadowcrest. In the alternative, Ochsner Health and/or Ochsner Westbank assumed the assets, liabilities, and obligations of Meadowcrest through a merger, purchase, or other acquisition.

18. Upon information and belief, by and through paragraph 17, Ochsner Health and/or Ochsner Westbank assumed the knowledge, responsibilities, and obligations of Meadowcrest – including its obligation to provide effective communication to persons with disabilities.

19. On September 15, 2016, a lawsuit was filed in the United States District Court for the Eastern District of Louisiana entitled *Bernius v. Ochsner Medical Center – North Shore, L.L.C.*, Case No. 2:16-cv-14730. In this Complaint, the daughter of a deaf individual accused Ochsner Health of discriminating for failure to provide sign language interpreters or other necessary accommodations.

20. Therefore, to the extent Ochsner Health had in any way "forgotten" about its obligations under the ADA, on September 15, 2016 Ochsner Health was yet again put on notice of its obligation to accommodate under the ADA.

21. Starting on or around November 17, 2016, Ms. Smith began visiting Ochsner Medical Center Westbank for pre-natal care.

22. Between November 17, 2016 and the birth of her son on June 14, 2017, Ms. Smith visited Ochsner Medical Center Westbank for pre-natal care on approximately fifteen separate

occasions.

23. Upon information and belief, during this time Ms. Smith only received an in-person sign language interpreter approximately five times and a video remote interpreter on approximately five occasions.

24. On or about June 5, 2017, counsel for Ms. Smith wrote to counsel for Ochsner Health regarding the lack of sign language interpreter. Ultimately, a sign language interpreter was provided to Ms. Smith at the time of the delivery of her child.

25. Upon information and belief, on or about June 15, 2017, an Oschner nurse scheduled a pediatric appointment at Kid-Med, a division of Oschner, for Ms. Smith to bring her son to.

26. When Ms. Smith arrived for her newborn son's first pediatric appointment at Kid-Med, no in-person sign language interpreter was present. When Ms. Smith requested a VRI, the staff at Kid-Med told her that they would not provide a VRI.

27. Since this first pediatric appointment at Kid-Med, Ms. Smith and her son have visited Kid-Med three additional times. Only twice since the initial pediatric visit was an in-person sign language interpreter provided. On the November 2, 2017 appointment, no in-person sign language interpreter, nor was a VRI was provided.

28. Ms. Smith does not have confidence that or assurances that defendants will provide her with a sign language interpreter when she returns to Ochsner Westbank again in the future. This lack of confidence is due to the discrimination she has suffered in the past and the lack of any assurances by defendants to Ms. Smith that they have changed their policies, procedures, or practices.

29. Defendants' failure to provide Ms. Smith with the necessary accommodations on

various occasions amounts to discriminatory treatment on the basis of her disability.

30. The harm allegedly sustained by Ms. Smith herein – the inability to access the services and accommodations offered by defendants – is the expected and foreseeable consequence of defendants' failure to comply with the requirements and mandates of the ADA. The statute and accompanying regulations exist to ensure that those with communication limitations will have full use of places of public accommodation. If the defendants failed to adhere to their obligations under these regulations, it was imminently foreseeable that those with disabilities would sustain the exact harms alleged by Ms. Smith in this lawsuit.

31. Defendants intentionally discriminated against Ms. Smith. Defendants were also deliberately indifferent to Ms. Smith's rights and communication needs.

32. Further, Defendants were purposeful in their choices, which is sufficient to constitute intentional discrimination under the Rehabilitation Act.

33. As a result of defendants' discrimination, Ms. Smith has suffered humiliation, fear, anxiety, emotional distress, isolation, segregation, invasion of her civil rights, mental anguish, embarrassment, and inconvenience.

34. Ms. Smith will likely seek defendants' healthcare services in the future, whether by choice or necessity, due to the proximity of defendants' medical facilities to her home (less than two miles), and her need for precisely the kind of specialized medical treatment offered by defendants' to the general public; due to the discrimination she has previously encountered, Ms. Smith reasonably anticipates that she will encounter discrimination by defendants again in the near and immediate future.

## CLAIM 1: VIOLATIONS OF TITLE III OF THE AMERICANS WITH DISABILITIES ACT

35. Ms. Smith repeats and realleges all preceding paragraphs in support of this claim.

36. At all times relevant to this action, Title III of the ADA, 42 U.S.C. § 12181, et seq. has been in full force and effect and has applied to defendants' conduct.

37. At all times relevant to this action, the United States Department of Justice regulations implementing Title III of the ADA, 28 C.F.R. Part 36, have been in full force and effect and have applied to the defendants' conduct.

38. At all times relevant to this action, Ms. Smith has been substantially limited in the major life activities of hearing and speaking, and is an individual with a disability within the meaning of the ADA, 42 U.S.C. § 12102(2). Defendants own, lease, and/or operate places of public accommodation within the meaning of 42 U.S.C. § 12181(7)(F).

39. Title III of the ADA provides that "No individual shall be discriminated against on the basis of disability in the full and equal enjoyment of the goods, services, facilities, privileges, advantages, or accommodations of any place of public accommodation by any person who owns, leases (or leases to), or operates a place of public accommodation." 42 U.S.C. § 12182(a).

40. Federal regulations implementing Title III of the ADA provide that a public "shall furnish appropriate auxiliary aids and services where necessary to ensure effective communication with individuals with disabilities." 28 C.F.R. § 36.303(c).

41. Federal regulations implementing Title III of the ADA further provide that a public entity "shall take those steps that may be necessary to ensure that no individual with a disability is excluded, denied services, segregated or otherwise treated differently than other individuals because of the absence of auxiliary aids and services" 28 C.F.R. § 36.303(a).

42. Defendants discriminated against Ms. Smith, on the basis of disability, in violation of Title III of the ADA and its implementing regulations.

43. As set forth above, absent injunctive relief, there is a clear risk that defendants'

discriminatory actions will recur with respect to Ms. Smith.

44. Ms. Smith is therefore entitled to injunctive relief, as well as an award of attorneys' fees, costs, and disbursements pursuant to the ADA, 42 U.S.C. § 12188(a)(1).

## **CLAIM 2: VIOLATIONS OF SECTION 504 OF THE REHABILITATION ACT**

45. Ms. Smith repeats and realleges all preceding paragraphs in support of this claim.

46. At all times relevant to this action, Section 504 of the Rehabilitation, 29 U.S.C. § 794, has been in full force and effect and has applied to defendants' conduct.

47. At all times relevant to this action, the United States Department of Health and Human Services ("HHS") regulations implementing Section 504 of the Rehabilitation Act, 45 C.F.R. Part 84, have been in full force and effect and have applied to defendants' conduct.

48. At all times relevant to this action, Ms. Smith has had substantial limitations to the major life activities of hearing and speaking, and has been an individual with a disability within the meaning of the Rehabilitation Act, 29 U.S.C. § 705(9). At all times relevant to this action, defendants received federal financial assistance, including Medicaid reimbursements, and were principally engaged in the business of providing health care. Therefore, defendants' medical facility is a program or activity receiving federal financial assistance pursuant to 29 U.S.C. § 794(b).

49. Section 504 of the Rehabilitation Act provides that "[n]o otherwise qualified individual with a disability . . . shall, solely by reason of her or his disability, be excluded from the participation in, be denied the benefits of, or be subjected to discrimination under any program or activity receiving Federal financial assistance." 29 U.S.C. § 794.

50. Pursuant to Federal regulations implementing Section 504 of the Rehabilitation Act, programs or activities receiving Federal financial assistance "must afford handicapped

persons equal opportunity to obtain the same result, to gain the same benefit, or to reach the same level of achievement, in the most integrated setting appropriate to the person's needs." 45 C.F.R. § 84.4(b)(2).

51.　The Rehabilitation Act extends relief to "any person aggrieved" by discrimination in violation thereof. 29 U.S.C. § 794a(a)(2).

52.　Defendants discriminated against Ms. Smith, on the basis of disability, in violation of 29 U.S.C. § 794.

53.　As set forth above, absent injunctive relief there is a clear risk that defendants' actions will recur against Ms. Smith.

54.　Ms. Smith is therefore entitled to seek and recover compensatory damages for the injuries and loss she sustained as a result of defendants' discriminatory conduct and deliberate indifference as hereinbefore alleged, pursuant to 29 U.S.C. § 794(a).

55.　Ms. Smith is further entitled to injunctive relief, as well as an award of attorneys' fees, costs, and disbursements pursuant to the Rehabilitation Act, 29 U.S.C. § 794(a).

### CLAIM 3: VIOLATIONS OF SECTION 1557 OF THE PATIENT PROTECTION AND AFFORDABLE CARE ACT

56.　Ms. Smith repeats and reiterates every allegation set forth in the foregoing paragraphs of this Complaint with the same force and effect as if more fully set forth at length herein.

57.　At all times relevant to this action, Section 1557 of the Patient Protection and Affordable Care Act ("Section 1557"), 42 USC § 18116 was in full force and effect and applied to defendant's conduct.

58.　At all times relevant to this action, Section 1557, 42 USC § 18116, incorporated the definition of disability in the Rehabilitation Act, 29 U.S.C. § 705(9).

59. At all times relevant to this action, Ms. Smith was substantially limited in the major life activity of hearing and speaking, and was an individual with a disability within the meaning of the Rehabilitation Act, 29 U.S.C. § 705(9) and of Section 1557, 42 USC § 18116.

60. At all times relevant to this action, Ms. Smith's primary language for communication was ASL and not Standard American English; and Ms. Smith had a limited ability to speak or understand Standard American English, and thus was an individual with limited English proficiency within the meaning of Section 1557, 45 C.F.R. § 92.4.

61. At all times relevant to this action, defendants received federal financial assistance, including Medicaid reimbursements, and were principally engaged in the business of providing health care. Therefore, defendants' medical facility is a health program or activity receiving federal financial assistance pursuant to 42 U.S.C. § 18116(a).

62. Pursuant to Section 1557, "an individual shall not, on the ground prohibited under . . . section 504 of the Rehabilitation Act of 1973 (29 U.S.C. 794), be excluded from participation in, be denied the benefits of, or be subjected to discrimination under, any health program or activity, any part of which is receiving Federal financial assistance . . ." 42 USC § 18116.

63. Defendants have discriminated and continue to discriminate against Ms. Smith solely on the basis of her disability by denying her meaningful access to the services, programs, and benefits defendants offer to other individuals, by refusing to provide auxiliary aids and services necessary to ensure effective communication with Ms. Smith, in violation of Section 1557, 42 U.S.C. § 18116.

64. Defendants discriminated against Ms. Smith by failing to ensure effective communication through the providing of qualified sign language interpreters on-site and/or

through VRI machines.

65. On information and belief, the refusal to offer neither on-site ASL interpreter services nor VRI machines and equipment is the result of a policy or practice of defendants to provide effective communication to Deaf individuals such as Ms. Smith.

66. As set out above, absent injunctive relief there is a clear risk that defendants' discriminatory actions will occur again against Ms. Smith.

67. Ms. Smith is therefore entitled to seek and recover compensatory damages for the injuries and loss she sustained as a result of defendants' discriminatory conduct and deliberate indifference as hereinbefore alleged, pursuant to 42 U.S.C. § 18116(a).

68. Ms. Smith is further entitled to an award of attorney's fees, costs, and disbursements pursuant to 42 U.S.C. § 18116(a), the Rehabilitation Act, 29 U.S.C. § 794(a).

## PRAYER FOR RELIEF

**WHEREFORE,** Ms. Smith respectfully prays that this Court grant the following relief:

a. Enter a declaratory judgment, pursuant to Rule 57 of the Federal Rules of Civil Procedure, stating that defendants' policies, procedures, and practices have subjected Ms. Smith to unlawful discrimination in violation of Title III of the Americans with Disabilities Act, the Affordable Care Act, and Section 504 of the Rehabilitation Act;

b. Issue an injunction forbidding defendants from implementing or enforcing any policy, procedure, or practice that denies deaf or hard of hearing individuals, or their companions, meaningful access to and full and equal enjoyment of defendants' facilities, services or programs;

c. Issue an injunction ordering defendant:

    i.    to develop, implement, promulgate, and comply with a policy prohibiting future discrimination against Ms. Smith or other deaf or hard of hearing individuals by failing to provide effective communication;

    ii.    to develop, implement, promulgate, and comply with a policy requiring that when a deaf or hard of hearing individual requests an ASL interpreter for effective communication, one will be provided either on-site or through the use of VRI equipment;

    iii.    to develop, implement, promulgate, and comply with a policy to ensure that defendants will notify individuals who are deaf or hard of hearing of their right to effective communication. This notification will include posting explicit and clearly worded notices that defendants will provide sign language interpreters, videophones, and other communication services to ensure effective communication with deaf or hard of hearing persons;

    iv.    to develop, implement, promulgate, and comply with a policy to ensure that deaf or hard of hearing individuals are able to communicate through the most appropriate method under the circumstances, recognizing that the VRI is not appropriate in all medical situations;

    v.    to create and maintain a list of sign language interpreters and ensure availability of such interpreters at any time of day or night; and

    vi.    to train all their employees, staffs, and other agents on a regular basis about the rights of individuals who are deaf or hard of hearing under the ADA, the RA, and the ACA.

d.  Award to Ms. Smith:

    i. Compensatory damages pursuant to the RA and ACA;

    ii. Reasonable costs and attorneys' fees pursuant to the ADA, RA, and ACA;

    iii. Interest on all amounts at the highest rates and from the earliest dates allowed by law;

    iv. Any and all other relief that this Court finds necessary and appropriate.

## DEMAND FOR JURY TRIAL

Ms. Smith demands trial by jury for all of the issues a jury properly may decide, and for all of the requested relief that a jury may award.

Dated: November 6, 2017

Respectfully Submitted,

**BIZER & DEREUS**
Attorneys for Plaintiff
Andrew D. Bizer (LA # 30396)
andrew@bizerlaw.com
Garret S. DeReus (LA # 35105)
gdereus@bizerlaw.com
Marc P. Florman (LA # 35128)
mflorman@bizerlaw.com
3319 St. Claude Ave.
New Orleans, LA 70117
T: 504-619-9999; F: 504-948-9996

By: /s/ Garret S. DeReus
      Garret S. DeReus